without having encountered any damage or accident. And if a towage engagement merely lead to the rescue of a ship from an imminent danger, it should be remunerated as salvage. 3 Hagg. Adm. 428.

That the court does not find as a fact that the ship and cargo would have been lost, or greatly damaged, if she had not been rescued by the tugs, but does find that there was danger of such loss, or great damage, and that the ship was rescued from that peril by the tugs, and the compensation which the libellants are entitled to receive for their services, must be a salvage compensation.

That there was but little, if any, more labor and peril incurred by the tugs than would have been incurred in such weather, in performing a towage service; that they manifested promptitude in obeying the signal, but were not diverted from their proper and usual employment, but were engaged in it; that the libellants have experienced but trifling injury or loss by the service which they have rendered, no more than probably would have been sustained if the ship had not by her leaky condition been exposed to impending peril, and that under all the circumstances the case demands only a moderate compensation.

Decree, therefore, that the libellants recover the sum of $1,000, to be divided equally between the two tugs.

## Case No. 11,108.

PHILLIPS v. UNITED STATES.

[See Case No. 11,107.]

PHILLIPS (WILCOCKS v.).  See Case No. 17,639.

PHILLIPS (WILLETT v.).  See Case No. 17,683.

## Case No. 11,109.

PHILLIPS v. WILSON.

[1 Wash. C. C. 470.] [1]

Circuit Court, D. Pennsylvania.  Oct. Term, 1806.

EJECTMENT—TITLE UNDER LAND WARRANT—SURVEY—LINES.

1. If the warrant for lands be uncertain, or if it be certain, and is laid in another place, and before the survey is made, no third person has acquired a title to the land on which the warrant is laid; every objection to a title so derived is done away.

2. The survey gives notice to all subsequent purchasers, and it is only such who can complain. Such a survey could not affect the title of a person, who in the meantime had acquired an incipient title to the land, either by warrant or settlement.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the supreme court of the United States, under the supervision of Richard Peters, Jr., Esq.]

3. If the surveyor has warrants to the amount of the lands surveyed, and he includes the whole in one survey, marking the boundaries of the different surveys, it is nothing to third persons how the warrants are appropriated, before the map of the survey is returned to the surveyor general.

4. Quere.—What would be the effect of a settlement upon the title to lands comprehended in another and adjoining survey, where the lines of the land claimed by the settlement, had not been run out, so as to take part of the lands so adjoining the settlement?

This ejectment is to recover 400 acres of land, lying north and west of the Ohio, Allegheny and Conewango. The plaintiff's title was founded on an application for this land, on the 25th of April, 1793, by one Megee (in the name of R. Thompson), who sold to Wells and Morris; a warrant in the name of Richard Wells, for 400 acres, lying between Big and Little Beaver creeks, to include his improvement; and a survey dated in March, 1795. The purchase money was paid the 12th June, 1794, and the warrant was entered, with the deputy surveyor of the district, in August, 1794. In 1800, a small additional sum was paid. In May, 1795, a connected plat of this, together with a number of other adjoining tracts, surveyed at the same time, on other warrants, for Wells and Morris and the Population Company, was returned by the surveyor, according to law, to the surveyor general's office. It appeared in evidence, that at the time when these several warrants, all for 400 acres each, were surveyed, the deputy did not appropriate the several tracts to the respective warrants; but after surveying and plotting them in a general map, the surveyor general made the appropriation, and allotted the warrant of Richard Wells to the land in question, which was proved to be in possession of the defendant. It was proven, that Megee had made improvements at a considerable distance from the land in dispute; but that none were made on this land, either by him or Wells, at the time the warrant issued, or for a long time afterwards. The plaintiff [lessee of Phillips] deduced a title regularly derived from Wells. It appeared in evidence, that according to common usage in this state, and the practice of the land office, the name of the person appearing on the list of applications, is always considered at the land office, as merely nominal, and is struck out at the instance of the real applicant, whenever he sells to a third person; and the name of such third person is inserted in his stead. This was done in the present instance. That it is also the general and uniform custom, that when the purchase money is paid, the warrant issues, and bears date as of the day of the application. The danger of making settlements on this part of the country, from 1793 to 1796, was admitted by the defendant's counsel, as proved in the cases of Huidekoper v. Burrus [Case No. 6,848]; evidence was also given by the plaintiff, that during that period, there were no settlements in this country, except